```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA    )
                            )
v.                          )      Criminal No. 08-10026-MLW
                            )
                            )
DOMINIQUE HINES             )
```

### GOVERNMENT'S SENTENCING MEMORANDUM

The government is submitting this memorandum to set forth the basis on which it is asking the Court to accept the plea agreement that has been tendered pursuant to Rule 11(c)(1)(C). That agreement calls for a sentence of 72 months and an additional period of supervised release of 3 years.

The government believes that the agreed-upon disposition is an appropriate one that reflects the seriousness of the instant offense, the increasing gravity of the defendant's crimes since the age of 17, and his youth. The government also believes that the sentence should include various conditions of supervised release including the requirement that the defendant stay out of Boston while on supervised release and that he be required to spend the first six months of supervised release in a halfway house outside Boston. These conditions are discussed below.

**1.   The recommended sentence**

The defendant is a 19-year old resident of Jamaica Plain, Massachusetts. Despite his age, he already qualifies as a career offender pursuant to U.S.S.G. §4B1.1. See PSR at ¶¶33, 36.

1

The defendant's career offender predicates are both convictions that result from crack cocaine distribution in and around the Bromley-Heath Housing Project ("the Project") where the defendant grew up and has repeatedly gotten into serious trouble.  On January 4, 2007, the defendant was charged with Distribution of a Class B Substance in Roxbury District Court. PSR at ¶33.  That case arose out of a series of controlled purchases of crack cocaine made to a cooperating witness working for the FBI in a federal investigation.  Id.  Because the defendant was 17 years old at the time (and was therefore a juvenile at the time of these offenses under federal law), he was charged in state court.  He was, however, charged as an adult.

This first case was resolved on March 27, 2007.  The defendant admitted to sufficient facts and the case was continued without a finding until 3/26/09.  Id. (hereinafter "drug trafficking conviction 1").  It was therefore a scoreable offense under the Sentencing Guidelines even if the defendant hadn't thereafter violated the terms of his probation.  See U.S.S.G. §4A1.2(f).

The defendant was charged with another drug trafficking charge on June 6, 2007 (approximately three months later, while he was on probation for drug trafficking conviction 1).  PSR at ¶36.  Like its predecessor, this case also arose out of the defendant's efforts to distribute crack cocaine at Bromley-Heath.

The defendant was approached by the Boston Police because he had been trespassed out of the Project. Id.  After being placed under arrest for trespassing, officers recovered 16 bags of crack cocaine, some marijuana, and $72 in cash from the defendant.  Id.

This arrest also resulted in a conviction for drug trafficking ("drug distribution conviction 2").  On August 1, 2008, the defendant was sentenced to 2 years in prison, with 6 months to be served and the balance suspended until August 1, 2009.  PSR at ¶36.  At the same, time his probation was revoked on drug trafficking conviction 1 and he was sentenced to six months on that case because of his probation violation there.

The defendant was released from prison on 11/14/07.  The conduct giving rise to the offense of conviction arose only six weeks later.  This time, the defendant was in possession of not only 14 bags of crack cocaine but a loaded firearm as well.  PSR at ¶13.

If the defendant were held accountable for the drugs found at the time of his arrest (which are believed to have been possessed for distribution purposes given the defendant's recent acknowledgment that he is not a crack cocaine user (see PSR at ¶¶66-69), his guideline range with a plea would be 188-235 months.  U.S.S.G. §4B1.1(b)(B).  If he were held accountable for the drugs on the gun offense, the guideline range would be 100-125 months.  PSR at ¶85.

The government is recommending a sentence of 72 months to be followed by 3 years of supervised release with the conditions discussed below.  It does so in deference to the defendant's age and in the hope that six years of prison along with a program of close supervision upon his release (consistent with the recommendations set forth below) will help to convince the defendant to change his ways and thereby avoid spending much of the rest of his adult life in prison.[1]

2.  **The defendant should be ordered out of the city of Boston while on supervised release**

A critical component of the overall sentence the government is recommending is that the defendant be ordered to stay outside Boston while he is on supervised release.  The government believes that it is critical for the Court to order the defendant to stay out of Boston while on supervised release except on holidays or other special occasions when he may be expressly permitted by his Probation Officer to visit during daylight hours.  The purpose of this restriction is to keep the defendant in a new environment where there will be fewer opportunities to

---

[1] The defendant is prepared to plea guilty to an information charging him with possession of *both* the gun and the ammunition it contained. The case was originally charged as only an ammunition case because trace information had not been received that was needed to establish the required nexus between the firearm and interstate commerce. By having the defendant plead to the firearm as well (now that this information has been received), the government is ensuring that he will face a stiffer sentence in state *or* federal court should he commit any additional crime of a similar nature after he is released.

commit crime and where the defendant will be able to focus on other rehabilitative efforts that the government is recommending he be required to make. See Cullen, "Environmental Corrections – A New Paradigm for Effective Probation and Parole Supervision," 66 Federal Probation 2, 28-37 (Sept. 2002) ("[t]he effectiveness of probation and parole supervision will be increased to the extent that officers systematically. . .reduce the extent to which offenders are tempted by and come into contact with opportunities for crime").

The Court's power to impose such a condition is clear. Under 18 U.S.C. §3583(d), the court is directed to impose certain mandatory conditions of release and may authorize "any other condition it considers appropriate." The only constraint on this authority is that the conditions be reasonably related to the criteria set out in § 3553 –nature/circumstances of the offense, history/characteristics of the defendant, the seriousness of the offense, need for future deterrence/public protection, and need to rehabilitate the defendant.

The Court need look no further than the text of section 3583 to conclude that the requested geographic restriction is proper. Section 3583(d) specifically authorizes a sentencing court to impose as a condition of supervised release any permissive condition set forth in section 3563(b)(1)-(10) or 3563(b)(12)-(20). Those provisions specifically allow a

sentencing court to require a defendant to "refrain from frequenting specified kinds of places or from associating unnecessarily with specified persons," to "reside in a specified place or area, or refrain from residing in a specified place or area," or "remain in the jurisdiction of the court, unless granted permission to leave by the court or a probation officer."

These restrictions simply make sense in this case where much of the troubles that the defendant has experienced are specifically related to the areas in which he has spent his time. The government therefore seeks a condition that would keep him out of that very same environment. This is particularly appropriate here where the record shows evidence of the defendant's repeated commission of crime in Bromley-Heath and other areas of the city and his association with known gang members from the Heath Street area.  <u>See</u> Exhibit 1 (BPD Field Interrogation Observation Reports regarding defendant's Heath Street Gang association). <u>See generally</u> Olson <u>et al</u>, "The Relationship Between Gang Membership and Inmate Recidivism," Illinois Criminal Justice Information Authority Research Bulletin (May 2004) (concluding that gang members had significantly higher recidivism rates than non-gang members); Federal Judicial Center, "Special Need Offenders Bulletin-Prison Gangs" (October,

1997)(same).² See also PSR at ¶59 (detailing unsuccessful efforts of defendant's mother to "shelter him from outside influences of his peers in the Bromley-Heath Development").

There is also ample basis in the cases for the proposed condition. In United States v. Smith, 436 F.3d 307 (1st Cir. 2006), the First Circuit upheld a supervised release condition imposed by this Court that barred a defendant from seeing his young daughter.³ Although the defendant argued that the condition violated his fundamental right to associate with his

---

² The Heath Street/H-Bloc dispute produced one of the most tragic murders in recent years. On November 28, 2006, Jamhol Norfleet was murdered outside his Holworthy Street residence. Norfleet was a leader of the H-Bloc Gang. Jamhol Norfleet was also a participant in ongoing truce discussions between Holworthy and Heath Street that were at one time secret but had been publicized in newspaper articles published several weeks earlier. See Boston Globe, "Two Gangs Find Real Peace in Secret" (November 5, 2006). Norfleet's murder also occurred on the anniversary date of the murder of a Heath Street associate Carl Searcy in 2005. The defendant has repeatedly been FIO'd in the company of members of the Searcy family. See Exhibit 1.

The government does not allege that the defendant had anything to do with this murder. The government does believe, however, that it shows the need for the relief sought in this case for the people in this area of the city and the need to protect the defendant from himself.

³ No such condition is requested in this case. The government is simply seeking to keep the defendant out of Boston subject to specific exceptions his probation officer may make permitting visits to family members during daylight hours on holidays and other special occasions. The government also notes that the defendant's mother is hoping to move to the Malden area to be closer to her mother, which move would further facilitate the defendant's reintegration to society outside the city of boston upon his release from prison. PSR at ¶61.

7

child, the Court responded that "those who are convicted of crimes against society lose a measure of constitutional protection" and thus "a sentencing court can infringe upon a convicted felon's liberty in various ways." Id. at 310. The Court held that a sentencing court could ask the defendant "to refrain from frequenting specified kinds of places or from associating unnecessarily with specified persons" and that the instant condition fell into this permissible category. Id. at 311 (citing § 3563(b)(6)). The Court further held that the instant condition satisfied the permissible sentencing goal of protecting the public.

While Smith did not involve a geographical restriction of the type sought here, other decisions have. At least three federal courts of appeal have upheld geographic restrictions as a condition of probation or supervised release when the restriction served as a deterrent to protect the victimized community and/or rehabilitate the defendant. See United States v. Cothran, 855 F.2d 749 (11th Cir. 1988) (validating a probation restriction that prevented defendant, convicted of cocaine distribution to minors, from traveling to Fulton County, Georgia because his return to a high-crime neighborhood in southeast Atlanta would likely result in his continued criminal activity and the endangerment of neighborhood youth); United States v. Sicher, 239 F.3d 289, 292 (3d Cir. 2000) (upholding a supervised release

restriction, after various drug convictions, that covered two counties in the Allentown, Pennsylvania area because the "territorial limitation [was] clearly intended to promote rehabilitation by keeping [defendant] away from the influences that would most likely cause her to engage in further criminal activity"). See also United States v. Alexander, 509 F.3d 253 (6th Cir. 2007) (affirming condition of supervised release that required defendant to live in city several hundred miles away from family for first 12 months of supervised release; court noted that condition: (a) "will further [defendant's] rehabilitation efforts by temporarily removing him from the destructive influences that have plagued him;" and (b) "holds the potential to protect the community from future crimes as well").[4]

---

[4] Appellate courts from at least twelve states have also upheld geographic restrictions as a condition of probation or parole when the restriction served as a deterrent to protect a victimized community and/or rehabilitate a defendant. See Beavers v. State, 666 So. 2d 868 (Ala. Crim. App. 1995) (upholding parolee's exclusion from a county because he had committed nine felonies in that county and the restriction would help prevent recidivism – rule does not apply to probationers); Oyoghok v. Municipality of Anchorage, 641 P.2d 1267 (Alaska Ct. App. 1982) (upholding probationer's exclusion from a red-light district of Anchorage to prevent her from engaging in further prostitution); Larson v. State, 572 So. 2d 1368 (Fla. 1991) (upholding probationer's exclusion from Tallahassee to prevent further witness tampering); Baker v. State, 609 So. 2d 167 (Fla. Dist. Ct. App. 1992) (upholding probationer's exclusion from a neighborhood in Tampa Bay after conviction for burglary and assault/battery); Collett v. State, 206 S.E. 2d 70 (Ga. Ct. App. 1974), rev'd 208 S.E.2d 472 (Ga. 1974) (invalidating probationer's exclusion from seven counties in the Atlanta metropolitan area, after drug abuse conviction, to remove him from the temptation of narcotics – exclusion later upheld by the

Courts upholding such conditions have given weight to the fact that the challenged conditions permitted the defendant to return to the restricted area with the permission of a probation officer. See Sicher, 239 F.3d at 292 (The "prohibition is not absolute, however, because she can enter either county with the permission of her probation officer. . . . These minor impositions on her liberty are no greater than are necessary to promote her rehabilitation by keeping her away from negative, if

---

Georgia Supreme Court); State v. Stanford, 900 P.2d 157 (Haw. 1995)(upholding probationer's exclusion from Waikiki – a high prostitution area of Honolulu – during evening hours to prevent her from engaging in further prostitution); People v. Pickens, 542 N.E.2d 1252 (Ill. App. Ct. 1989) (same, but excluded area was the red-light district of a central Illinois city and exclusion applied twenty-four hours per day); State v. Morgan, 389 So. 2d 364 (La. 1980) (same as Pickens, but excluded area was the French Quarter in New Orleans); State v. Nolan, 759 A.2d 721 (Me 2000) (upholding probationer's exclusion from two towns because he had committed numerous crimes in the area and the restriction would help prevent recidivism); State v. Haynes, 423 N.W.2d 102 (Minn. Ct. App. 1988) (upholding probationer's exclusion from a high-crime neighborhood in Minneapolis to prevent defendant from committing another drug crime); K.N.L. v. State, 803 So. 2d 1245 (Miss. Ct. App. 2002) (upholding delinquent minor's exclusion from a mall where she committed shoplifting to prevent recidivism) (citing Cobb v. State, 437 So. 2d 1218 (Miss. 1983) (upholding probationer's exclusion from all areas within a 125 miles of the county)); State v. Wacey C., 86 P.3d 611 (N.M. Ct. App. 2004) (upholding a juvenile probationer's exclusion from two towns, after a crime spree there, to prevent future crime and protect the defendant from retaliation); State v. McBride, 873 P.2d 589 (Wash. Ct. App. 1994) (upholding probationer's exclusion from a high-drug neighborhood in Spokane to prevent recidivism).

not wholly disastrous, influences"). <u>See also</u>, <u>Cothran</u>, 855 F2d at 752. The Eleventh Circuit also relied on the language of the current federal probation statute, now 18 U.S.C. § 3563(b)(13). <u>See</u> <u>Id</u>. at 753 ("Congress has recently chosen to empower federal courts with the authority to require a probationer to 'reside in a specific place or area, or refrain from residing in a specific place or area'" suggesting "that the district court's challenged condition of probation is simply not contrary to public policy").[5]

    The government is seeking a restriction in this case from all of Boston rather than only the Bromley-Heath Housing Project. It does so because the defendant's documented criminal activity was not limited to Bromley-Heath and because the defendant so brazenly and repeatedly prior orders that he stay out of the Project. <u>See</u> PSR at ¶34, 35, 36(trespass or other violations). <u>See also</u> Exhibit 2. The government notes that exactly this type of restriction has been ordered against other Bromley-Heath residents who, like the defendant, sold drugs at Bromley-Heath in violation of a BHA "No Trespass Order" and had serious criminal records. <u>See United States v. Carrasquillo</u>, Criminal No. 06-

---

[5] The condition the government is proposing here would allow modification once the defendant is released and would permit the defendant's probation officer to allow the defendant access to Suffolk County on holidays and other special occasions to see family members during daylight hours if in fact those family members remain in Bromley-Heath.

10320 (Young, J.)(comparable defendants excluded from Suffolk County for full periods of supervised release of up to 12 years).[6] See also United States v. Tom, 2007 WL 2822908 (1st Cir. 2007)("Post-Booker, there remains a strong interest in national uniformity among defendants who commit the same crimes and are similarly situated.").

### 3. Other recommended Conditions of Supervised Release

The government is also recommending the following additional conditions be imposed as part of the overall Judgement of conviction in this case:

**A. First Six Months of Supervised Release should be served in a Halfway House Outside of Boston**. The government recognizes that the geographic exclusion will keep the defendant away from some family contact and much that is familiar to him. To some extent, that is the point. In order to alleviate the disruption that this will cause and help the defendant re-integrate back into society upon his release, his first six months of supervised release should be spent in a halfway house outside of Boston and the defendant should be required to comply with all of the terms and conditions of that facility. There is presently such a facility in Lawrence, Massachusetts.

---

[6] Amos Carrasquillo, one of the defendants in the referenced case, is listed in a number of the attached FIO's as being in the company of the defendant. See Exhibit 1.

**B.   Continued Education**.  The defendant should be required to obtain his GED while on Supervised Release (if he has not obtained it in Prison) and to attend any and all available job training as direct by Probation.  See PSR at ¶¶72 (defendant hopes to obtain GED and vocational training in plumbing or painting).

**C.   Employment**.  The defendant should be required to seek and maintain employment while on Supervised Release.  See PSR at ¶73 ("the defendant is a young man with no history of stable employment").

**D.   Other conditions.** The forgoing recommended conditions are in addition to others (such as drug treatment and counseling, mental health treatment and counseling to the extent the Court or probation considers it to be appropriate) that the court would normally impose in a case of this nature.

>                         Respectfully submitted,
>
>                         MICHAEL J. SULLIVAN
>                         UNITED STATES ATTORNEY
>
>                    By:  /s John A. Wortmann, Jr.
>                         JOHN A. WORTMANN, JR.
>                         Assistant U.S. Attorney
>                         One Courthouse Way
>                         Boston, MA 02210
>                         (617) 748-3207